No. 37,636

THE STATE OF KANSAS, *Appellee*, v. TOMMY FANNAN, *Appellant*.

(207 P. 2d 1176)

Opinion filed July 9, 1949.

*Wm. Gough, Jr.,* of Chanute, argued the cause, and *T. R. Evans,* of Chanute, was with him on the brief for the appellant.

*George W. Donaldson,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, and *C. H. Hughes,* assistant attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: The appellant was charged in two counts of an information, the first being for the larceny of one sow and four shoats, all over the value of $20, and the second count being for burglary

and the larceny of certain articles of personal property, to wit: One mangle, one kitchen clock, one saddle and bridle, one shotgun, two electric irons, one electric waffle iron, and one radio, all over the value of $20, all of said property being the property of one Bill Bailey.

The jury returned a verdict of not guilty on count one but convicted appellant of burglary and larceny on the second count. Since, in our opinion, this case really turns on one proposition, it will be necessary to set out the state's evidence in detail.

Bill Bailey (hereinafter referred to as Bill) lived with his wife and four children on the outskirts of Chanute and was engaged in hauling refuse for the city, private individuals and stores. He owned two trucks and both he and his wife did hauling which accounted for the fact that they were away from their home a good many evenings. On Saturday night, October 9, 1948, he and his family had been to a circus in town and arrived home rather late. He had 42 head of hogs on his premises and on Sunday morning, the 10th, he discovered seven head, one sow and six shoats, were missing. He did not report this loss to the authorities at the time.

On Monday evening, the 11th, he and his family were again away from home and the next morning he missed the articles of personal property listed in count two. He testified that the mangle had been kept in a screened-in porch, the shotgun in the children's room, electric clock and waffle iron in the dining room, and the saddle and bridle in the garage which was about fifty feet from the house. Entrance to the house was through the screened-in back porch, into the kitchen and then to the other rooms. On the night in question the house was not locked but the doors were closed, including the door to the screened-in porch. There was a small three-room tenant house about 150 feet away, and he testified that the lock on it had been broken and the radio taken from this building. The broken lock was introduced in evidence as well as the articles of personal property (except the radio which had not been recovered) and all were identified by Bill as belonging to him.

Mary Bailey, wife of Bill, was called as a witness and identified the various articles. She further stated that the mangle was worth about $150.

The next witness was the undersheriff and he testified he knew Bill; that on about October 15 he and Bill went to the home of one Bunn across the state line in Missouri where Bill identified four

shoats as belonging to him; later they went to the farm of one Meek, northwest of Fort Scott, where Bill identified the sow he had owned; that he was present at the police station in Chanute while appellant was being questioned and that appellant admitted he had hauled the sow and four shoats.

The sheriff testified that when the alleged theft was reported to him he concluded that George Bailey (hereinafter referred to as George), a brother of Bill, would be a good suspect; that he set out to look for George and finally found him at appellant's house in Fort Scott. George was taken back to Chanute and after being questioned by the officers told them where the articles of personal property were. He said that he had hired appellant to haul the property from Chanute to Fort Scott; that he and appellant "had talked it over" and finally decided to come to Chanute and get it. The shotgun was found in George's room at the home of appellant. The witness further testified that when he finally caught up with appellant the latter denied that either he or his truck had been in Chanute but that he later changed his story and admitted that he and George had driven from Fort Scott to Chanute to get the property; that George had hired him to haul it but that he (appellant) supposed the property belonged to George; that he had sold the four shoats to one Bunn over in Missouri for $55; that he had bought the sow from George for $20 and then had taken it out in the country to a relative of his. The witness further testified that throughout all the questioning appellant had stuck by his story; that he at all times supposed the property belonged to George and that he did not know it was stolen.

The chief of police in Fort Scott testified that he knew appellant and that he went with the sheriff to appellant's house where some of the articles in question were found.

Following the completion of this oral testimony the state offered in evidence two authenticated copies of prior convictions of appellant. The first of these recited appellant's conviction of robbery in the first degree and of bank robbery in Linn county, Kansas, in 1938, and his subsequent sentence to the state penitentiary. The second was a recital of the conviction of appellant of the offense of robbery in the first degree in 1931 in the state of California and his sentence to the state prison of that state.

Both of these exhibits were strenuously objected to by appellant, but were received in evidence by the court as being competent to

show intent and guilty knowledge. In this connection it should be noted that in his opening statement to the jury counsel for the state said that the evidence in the case would show appellant had twice been convicted of similar offenses.

At the conclusion of the state's evidence appellant's motion for discharge was overruled, whereupon George and appellant were both called as witnesses for the defense.

George admitted that he had entered his plea of guilty in court the morning of the trial (from the record, presumably for the offenses for which appellant was on trial). He testified that he had been living in appellant's house in Fort Scott; that he had hired appellant to go with him to Chanute to haul the property in question back to Fort Scott and that he paid him $10 for each trip; that on the 9th they had gotten the hogs and then came back two nights later and got the other stuff; that appellant had helped him load it on the truck but that he had not told appellant the property did not belong to him.

The appellant testified substantially to the same effect and stoutly denied that he knew the property was being stolen.

As heretofore stated, appellant was acquitted on count one but convicted on count two and was sentenced to the penitentiary for a term of not less than fifteen years on the larceny charge and for a like term on the charge of burglary in the second degree, the sentences to run concurrently.

On appeal appellant alleges eight specifications of error but in his brief and argument to this court the principal ground relied upon for reversal is that the court erred in admitting the evidence of the two prior convictions.

In the last analysis actually about the only question the jury was called upon to decide was whether the appellant knew that the property was being stolen. There was no dispute as to the physical facts. The property was stolen from Bill. George, his brother, admitted stealing it and appellant admitted being with George at the time the property was taken and so guilty knowledge on the part of appellant was really the only issue for the jury to decide.

It is of course elementary that as a general rule the commission of the offense for which a person is on trial cannot be proved by evidence that he committed another independent offense but of the same sort, and ordinarily evidence of the commission by defendant of other offenses is not admissible in the state's case in chief. On the other hand, there are several well-recognized exceptions to the

rule, one of them being that evidence of similar offenses is admissible under proper instructions when such offenses are relevant to prove *scienter* or guilty knowledge or to prove intent. If previous crime or conduct have a natural and logical tendency to establish the crime, or an element of the crime, for which the defendant is on trial, the evidence is admissible and ought to be admitted, as this court has many times held. Moreover, mere remoteness in time affects the weight to be given such evidence, rather than its admissibility. The question is—did the evidence tend to prove guilty knowledge? We shall not extend this opinion with a detailed discussion of the instances where such evidence has been held admissible and those in which it has been excluded but reference is made to the recent case of *State v. Owen*, 162 Kan. 255, 176 P. 2d 564, where in the majority and dissenting opinions many cases on each side of the question are cited. The court in its instructions told the jury that such evidence was only to be considered on the question of guilty knowledge and intent on the part of appellant and was not to be considered in determining the guilt or innocence of appellant of any of the offenses charged in the information. Under the facts of this case and in the light of the state of the evidence at the time of its introduction we hold that the court did not commit error in this respect.

Appellant complains of alleged misconduct on the part of the county attorney in his argument to the jury with reference to the matter of the broken lock which, according to the testimony, had been on the small three-room tenant house. We have examined this point and in our opinion counsel for the state did not go beyond the limitations of fair argument and furthermore, since the broken lock was in evidence it was a fair subject of argument to the jury.

Complaint is also made of the instruction given to the jury and the refusal of the court to give several instructions requested by appellant. We have examined the instructions given and we think they fairly presented and covered all issues in the case and taken all together included the matter contained in those requested by appellant.

And finally, it is urged that the sentence of the court was illegal and void and was not assessed under any applicable statute.

Appellant was convicted of burglary in the second degree, the penalty for which is confinement for not less than five nor more than ten years (G. S. 1935, 21-523) and of larceny in the commis-

sion of the burglary, the penalty for which is confinement for a period not exceeding five years (G. S. 1935, 21-524, 21-534). G. S. 1947 Supp. 21-107a, provides that one convicted a third time of felony shall be confined in the penitentiary for a period of not less than fifteen years. That was the sentence given appellant on each of the charges, the sentences to run concurrently, and under the statute was proper.

Various other alleged errors complained of have been examined but are without merit and require no discussion. There was ample, substantial competent evidence upon which the jury was justified in returning a verdict of guilty and there appearing in the record no trial errors of sufficient importance to require a reversal, the judgment of the lower court is affirmed.

SMITH, J., dissenting from (a) under paragraph 4 of the syllabus and the corresponding portion of the opinion.