No. 43,381

STATE OF KANSAS, *Appellee,* v. LARRY JACK STEPHENSON, *Appellant.*

(381 P. 2d 335)

Opinion filed May 11, 1963.

*Robert R. Arnold,* of Wichita, argued the cause, and *Richard V. Foote,* also of Wichita, was with him on the brief for the appellant.

*Guy L. Goodwin,* Deputy County Attorney, argued the cause, and *William M. Ferguson,* Attorney General, *Robert E. Hoffman,* Assistant Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal case from a conviction and sentence of robbery in the first degree and felonious assault.

The controlling question is whether the admission of evidence concerning other offenses, in the nature of confessions and convictions, prevented the appellant from having a fair and impartial trial.

The evidence disclosed that at approximately 9:15 p. m. on the evening of October 24, 1961, Sharon Burns, age 15, was walking on the north side of Douglas Avenue in Wichita, Kansas, approaching the intersection of Water Street from the east, when a man who gave his name as Larry Richards or Richardson drove his automobile alongside of her at the curb and asked her if she wanted a

ride. She did not answer and continued to walk in a westerly direction. She crossed the intersection of Water Street to the bus stop where she wanted to catch the 9:32 bus to take her home from a Junior Achievement meeting which she attended. The man asked her again if she wanted a ride and she refused. After repeated efforts to get her into the car, he stopped the vehicle and approached her on the sidewalk. She backed away from him and told him to go on. She refused to give him her name and was about to cry when she saw an object in his hand which she described as being white and shaped like a bottle. She started screaming, saying "don't, don't," but he struck her and she fell to her knees and dropped her purse. She testified:

"I sort of crawled on my knees and I got up and started running. And I looked back and I saw him. He started for his car and then he saw my purse there and he went back and got it. And then he got in the car. And I was running west on Douglas; I was running, and he came up, he got in the car and then he came up beside me and asked me if I was sure I didn't want to get in."

Two boys in another automobile then came to her assistance and called the police.

Sharon was subsequently taken to the hospital where four stitches were taken in her scalp. While at the hospital she identified the appellant's picture from a group presented to her. Later that evening she identified the appellant in a line-up at the Wichita police department. Prior to the appellant's appearance in the line-up she identified his voice from outside the room where she was waiting.

The information charged the appellant with robbery in the first degree in one count, and felonious assault in another count. He was tried before a jury and found guilty on both counts of the information as charged.

During the *voir dire* examination of the jurors, the attorney for the state made reference to the fact that the appellant had been convicted of other crimes. Objection was made to these references and the appellant unsuccessfully moved the court for a mistrial. No record was taken of the *voir dire* examination, and in view of our decision herein no further consideration will be given to this point relied upon by appellant for reversal.

Counsel for the state in his opening statement informed the jury the appellant had committed offenses other than the ones for which

he was charged in the case at issue. Such reference was properly challenged and is also presented as a ground for reversal on appeal.

During the state's case in chief O. A. Ballinger, deputy county attorney, was permitted to testify over objections of the appellant. Ballinger testified that he was employed in the county attorney's office of Sedgwick County on the 3rd day of February, 1958, and knew the appellant in this action on that occasion as Larry Jack Stephenson; that he was present in the Court of Common Pleas when the appellant was before the court, and had a recollection of the occurrences that took place at that time; that the appellant pleaded guilty to petty larceny in a case on which he had been working for approximately three to four weeks. He was permitted to testify to matters within his knowledge which occurred over a period of approximately thirty minutes just prior to the appellant entering the foregoing plea to petty larceny. He said the original act involved the taking of a purse from a lady in Wichita; that the original charge was a felony involving an incident where the appellant met a woman that he did not know, and he took the purse from the woman after having talked to her just a very short time; that the appellant's attorney at that time was willing to plead the appellant guilty to a charge of petty larceny because the amount of money in the purse which was taken was not sufficient to make it grand larceny under the grand larceny section; and that a plea to petty larceny was accepted because the complaining witness did not want to testify.

Floyd L. Williamson, employed by the Wichita police department, was permitted to testify over the appellant's objection concerning conversations with the appellant in regard to robberies. He testified:

"Q. And what was that conversation?

"A. This was part of a crime that he had committed that he wanted to tell me about.

"Q. Now, can you recall what he told you about any robberies?

"A. Well, it was a purse-snatching. The area where it was committed in is a matter of record. I don't have that all in my mind since 1958.

"Q. Did you make a report on what he had told you?

"A. Yes, I did.

"Q. Would you like to look at the report to refresh your recollection?

"A. I would. This case that was talked about at this time was a purse-snatching from a woman in an alley in the 700 block on North Market. It happened at 8:45 in the evening on December the 20th of 1957.

"Q. Just relate to us what your conversation with the defendant Larry Jack Stephenson was.

[Objection overruled.]

"A. He stated that he had been roaming up and down the alleys actually looking for someone to roll, is what he had stated, and that he had seen this woman walking down the street. He ran up and grabbed her purse, ran away with it. She only had approximately $50 in cash in the purse, and he stated that the purse should have been found as he had thrown it away a few feet from where he had taken it.

"Q. Did you have any conversation with him in regard to any other robberies?

"A. He stated that he had committed approximately three.

"Q. Did he tell you anything about these roll jobs?

"A. The only one that I recall was the one involving a colored man, and this was supposedly on 21st Street. However, I found no record of that particular . . .

"Q. Did he tell you what he did?

"A. Yes, he stated this colored man was in a drunken condition, that he slugged him and took his money.

"Q. Did he tell you where this took place?

"A. Where? On 21st Street.

"Q. Did he tell you about any other robberies in any part of the city?

"A. Well, other than the other two, I can't recall the other two, sir.

"Q. Did he tell you where they took place?

"A. Possibly at that time, but I don't remember it.

"Q. Did you discuss with this defendant at that time or any other time the commission of any other crimes?

Mr. Arnold: Objection. Any other crimes have nothing to do with this case.

"The Court: I will sustain it.

"Q. Did you discuss with him, or did he tell you about any other thefts that he had committed?

"A. Yes, he did.

"Q. And can you tell us what that was?

"A. There was a large number of auto accessory thefts.

"Mr. Arnold: Now, objected to as a conclusion.

"The Court: He may state what he said.

"Q. Do you recall how many he told you about?

"A. I believe all told there were 74 cases.

"Q. These all involved thefts?

"A. Yes.

"Q. Did he tell you what he took or what happened, or what he did with the property he took?

"A. Well, some of it had been stashed, some of it had been used on cars, and some of it had been sold. Some of it we recovered and some of it we didn't.

"Q. You mean you recovered after he told you about it?

"A. Yes.

"Q. He told you where the property was?
"A. Yes, he took me to it.
"Q. And you went out and recovered it?
"A. Yes.
"Q. You said there were how many?
"A. I believe it was 74."

On cross examination Mr. Arnold testified that the appellant was never prosecuted on the seventy-four auto accessory thefts. He also testified the appellant's police record was "Very minute"— he believed two offenses.

The state introduced in evidence a file, case no. A-80148, entitled State of Kansas v. Larry Jack Stephenson, in the district court of Sedgwick County, Kansas, the journal entry of which indicates that the appellant on the 19th day of January, 1960, pleaded guilty to the offense of grand larceny and was sentenced accordingly. This was admitted over objection.

The defendant's evidence consisted of the testimony of his grandmother, Mrs. Anna Ross, with whom the appellant had lived since birth. On cross examination Mrs. Ross was asked whether the appellant was in the Reformatory for a year prior to October, 1961. Over objection the court required her to answer, "If she knows."

The appellant did not take the witness stand and never testified.

The principal contention of the appellant is that the introduction into evidence of confessions and convictions of other crimes committed by the appellant denied him a fair and impartial trial. This point is well taken.

The basic rules governing situations of this type were stated in *State v. Myrick*, 181 Kan. 1056, 317 P. 2d 485, as follows:

"The well-recognized general rule prevailing in this and other jurisdictions is that evidence is inadmissible to prove that the accused has been convicted of another crime independent of, and unrelated to, the one on trial; it is not competent to prove one crime by proving another. [Citing cases.] All evidence, to be admissible, must be relevant, and the general rule is based upon the principle that evidence of an unrelated prior conviction is irrelevant to prove the offense charged, and has a tendency to prejudice the minds of the jury against the accused and to predispose them to a belief in his guilt. Further, that evidence of a prior conviction, when offered in the state's case in chief, violates the rule of policy which forbids the state initially to attack the character of the accused, and that which prohibits proof of bad character by particular acts (1 Wharton's Criminal Evidence, 12th ed. § 232, p. 492). The rule against the admissibility of such evidence should be strictly enforced. (*State v. Frizzell* [132 Kan. 261, 295 Pac. 658], supra, Syl. ¶ 1.)

"To this general rule there are several distinct exceptions which have been permitted from absolute necessity, to aid in the detection and punishment of crime (1 Underhill's Criminal Evidence, 5th ed. § 206, p. 464; 1 Wharton's Criminal Evidence, 12th ed. § 233, p. 498; 22 C. J. S. Criminal Law, § 683, p. 1089). One is that proof of an independent crime is admissible in the discretion of the court, and may be received in the state's case in chief, under proper instructions, if it is relevant to the proof of the guilt of the defendant for the crime with which he is charged. To be relevant it must prove or tend to prove identity of person or crime, to prove *scienter* or guilty knowledge, to prove intent, to show inclination or motive, to prove plan, scheme or system of operation, to prove malice and to rebut special defenses. [Citing cases.] If the evidence is competent, material and relevant to the issues on trial, it is not rendered inadmissible because it may show that the defendant is guilty of another crime, or has been previously convicted. Such evidence is not admitted because it is proof of the other crime, but because of its relevancy to the charge on trial (1 Wharton's Criminal Evidence, 12th ed. § 233, p. 498). While prejudice of other crime or prior conviction is not removed where such evidence is found to be relevant under the exception to the general rule, courts have declared its relevancy outweighs the prejudice, and it is, therefore, proper for the jury's consideration under appropriate instructions." (pp. 1058, 1059.)

A previous landmark case on this subject is *State v. Frizzell*, 132 Kan. 261, 295 Pac. 658, where the court said the exceptions are founded upon as much wisdom and justice as the rule itself, and the rule should be strictly enforced and should not be departed from except under conditions which clearly justify such departure.

In the case at bar the county attorney prior to trial was served notice that the appellant intended to enter a plea of alibi at the trial of the case. It was therefore apparent the principal issue of fact in the case would be the matter of the identity of the person committing the offenses. Evidence of other similar offenses was made more urgently necessary in order to rebut the defense of alibi. *(State v. Frizzell,* supra.)

Conviction is not a prerequisite to the admission of other similar offenses in evidence, if the requirements for its admission are otherwise fulfilled. Evidence merely showing the commission of other similar offenses seems to be sufficient. This is particularly true in cases involving sexual offenses. *(State v. Stitz,* 111 Kan. 275, 206 Pac. 910; and *State v. Whiting,* 173 Kan. 711, 252 P. 2d 884.) Evidence of other similar transactions where the accused was charged with embezzlement was held proper for the purpose of showing intent in *State v. Robinson,* 125 Kan. 365,

263 Pac. 1081. Another case in point is *State v. Harper*, 137 Kan. 695, 22 P. 2d 454.

The appellant in the instant case was charged with offenses committed against the person of another—robbery and assault. Under the circumstances presented by the facts in this case, evidence of other similar offenses would be admissible to prove identity of the person committing the offense, to prove *scienter* or guilty knowledge, to prove intent, to show inclination or motive, to prove plan, scheme or system of operation, and to rebut the special defense. Such similar offenses would include "purse snatching" and "roll jobs" previously committed by the appellant. Remoteness in time affects the weight to be given such evidence, rather than its admissibility. *(State v. Fannan,* 167 Kan. 723, 727, 207 P. 2d 1176.)

On another point the appellant contends the state has not made out a *prima facie* case. He argues the most the state's evidence proved in this case was simple assault because the assailant had left Sharon without picking up the purse, and then returned to pick it up, thus showing no intent to rob at the time the act was committed. This was a question for the jury to determine, and certainly evidence of other similar offenses committed by the appellant would assist the jury in determining the question of intent. (See, *State v. Fannan*, supra.)

The appellant makes no objection to the instructions given by the court and we must assume, insofar as the record discloses, the jury was properly instructed concerning the limited purpose for which evidence of other similar offenses was admissible.

The record, however, presents a more serious question—that relating to admissions or confessions made by the appellant as to other offenses.

In *State v. Myrick*, supra, it was said:

". . . However, we find the general rule to be that a statement in the nature of an admission or confession, to be admissible, must relate to the offense in question. . . ." (p. 1060.)

While the point was not directly before the court in *State v. Winchester*, 166 Kan. 512, 203 P. 2d 229, the court had this to say:

"It is not clear as to just why the state offered or the court admitted in evidence before the jury the foregoing colloquy largely between the chief of police and the county attorney! Certainly this so-called 'statement' is not in the nature of a 'confession' by the defendant of the offense for which he was being investigated, and nowhere in the record is it shown that that por-

tion relating to prior offenses by the defendant was offered for the purpose of showing his alleged tendencies to commit the crime in question, even assuming that under the state of the testimony such evidence was admissible! The state argues that the admission of this statement in evidence was not error for the reason that since the defendant was present the conversation between the chief of police and the county attorney was not hearsay—that the defendant had the opportunity to deny the conversation was had—and since he has not done so, he is not in a position to complain.

"We cannot agree with this contention and hold that the admission of such evidence was clearly erroneous and highly prejudicial to the rights of the defendant. If the state desired to use the testimony of the chief of police, he should have been called as a witness. Furthermore, evidence of other offenses by the defendant in the state's case in chief may only be offered under certain circumstances and when surrounded by certain legal safeguards—not here present and which need not here be discussed." (pp. 515, 516.)

We hold upon the facts here presented where one is charged with a criminal offense, a statement in the nature of an admission or confession, to be admissible in evidence, must relate to the offense or offenses for which the accused is on trial. Here the testimony of admissions and confessions made by the appellant related to independent offenses. These admissions and confessions were made long prior to the commission of the offenses for which the appellant was on trial. Furthermore, the seventy-four auto accessory thefts to which fleeting reference was made by the police officer are not sufficiently similar to the offenses for which the appellant was on trial to be admissible under any of the exceptions to the rule. (See, *State v. Aldrich*, 174 Kan. 335, 255 P. 2d 1027; and *State v. Fannan*, supra.)

We are not confronted with circumstances where the statement of the defendant included a reference to prior offenses, as well as to the offense charged. In that situation where there can be no separation of the relevant from the irrelevant, it has been held the jury may consider the entire statement under proper instructions. (*State v. Cowen*, 56 Kan. 470, 43 Pac. 687; and see, *State v. Winchester*, supra; and *State v. Myrick*, supra.)

Under the foregoing rules it follows that the appellant in the instant case has been denied a fair and impartial trial by the erroneous admission of evidence of other offenses.

*A fortiori*, reference to other offenses committed by the accused, if not admissible in evidence, would be improper in the opening statement. However, if evidence of similar offenses is admissible, it would be proper to make reference to such evidence in the open-

ing statement. (See, *State v. Frizzell,* supra; and *State v. Robinson,* supra.)

In view of the foregoing other points raised by the appellant become immaterial.

The judgment of the lower court is reversed with directions to grant the appellant a new trial.