No. 47,582

STATE OF KANSAS, *Appellee,* v. JAMES CROSS, JR., *Appellant.*

(532 P. 2d 1357)

Opinion filed March 1, 1975.

*Robert J. Watson,* of Kansas City, argued the cause, and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Vern Miller,* attorney general, and *Philip L. Sieve,* chief deputy district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by James Cross, Jr., (defendant-appellant) from a conviction of voluntary manslaughter (K. S. A. 21-3403). The primary point asserted on appeal controlling our decision concerns the admissibility at the trial of a prior conviction pursuant to K. S. A. 60-455.

On April 2, 1973, one Joe Forte was stabbed to death at his home located at 2320 North 9th Street in Kansas City, Kansas. At that time the defendant lived with Forte on a rental basis and did various odd jobs about the household. The information charged that the defendant willfully and deliberately with premeditation and malice aforethought murdered Forte by stabbing, while in the perpetration or attempt to perpetrate the crime of robbery (K. S. A. 21-3426), contrary to K. S. A. 21-3401.

The record on appeal discloses very little of the state's evidence. As far as we can gather from the record and briefs, the defendant made at least three statements to the police, all in varying degrees of incrimination. The defendant was identified as the person who

cashed Forte's pension check on the evening of the crime; and the defendant was identified as the person who emerged from Forte's home on the evening of the crime carrying articles of personal property and the pension check belonging to Forte.

During the state's case in chief a conference was held by the court with the attorneys for the defense and state regarding the state's desire to introduce into evidence Exhibit No. 12, which purported to be a 1958 order from the State of Michigan sentencing the defendant to imprisonment for three to fifteen years for robbery while armed with an automatic weapon. The state urged the prior conviction was admissible under K. S. A. 60-455 to show knowledge, intent and lack of mistake in taking the pension check and personal property from Forte. The defendant contended the fifteen-year-old conviction was too remote to the offense charged to be relevant.

Tony Kovac, a booking officer with the police department, testified that the defendant's fingerprints were identical to the fingerprints attached to Exhibit No. 12 (the 1958 Michigan conviction). At this point the exhibit had not been identified before the jury or offered into evidence.

After Kovac's testimony, a proceeding was held outside the hearing of the jury. The defendant again objected to the admission of the prior conviction on the grounds that the only reason it was being introduced was to prejudice the jury; it was irrelevant; too remote in time; and the exhibit was vague and indefinite as to the particulars of the crime. The state intended to offer Exhibit No. 12 into evidence and told the court that a witness would verify the document's authenticity. The court took the matter under advisement at that time.

After the state rested its case, Dr. Shufang Chang, a psychiatrist working with the Wyandotte County Health Center at the time of the trial, testified for the defense. Dr. Chang had previously served on the staff at the Osawatomie State Hospital where she had examined and treated the defendant in August of 1971, when he had been admitted to the hospital in a drunken condition. The defendant remained hospitalized and under the doctor's care until November of 1971. The defendant was given medication to sober him up and then was put on librium which he continued to take up to the time of the trial. The doctor testified that while the defendant was a patient at Osawatomie he was cooperative and never violent. Dr. Chang considered the appellant to be a highly suggestive person

based on the fact that he followed directions so well. The witness also testified that if the defendant drank liquor and took medication on the same occasion he would become very confused and disorganized and would black out for a period as long as 72 hours, during which he would not realize what he was doing, but afterward there would be a possibility he would remember what he had done during the black out period.

Also testifying on behalf of the defendant was Edward Watson, a real estate broker and owner of a retail liquor store, who had known the appellant for about ten years. On direct examination Watson testified in response to questions that he trusted the defendant; recognized the defendant had a "drinking problem", but nevertheless considered him a "fine fellow" and honest; he did not believe the defendant committed the crime; and he had never known the defendant to be violent when he was either drunk or sober.

On cross-examination of Mr. Watson the prosecutor asked the following question:

"I will just ask you this, Mr. Watson. Would it change your mind any if you knew this man had been convicted of an armed robbery with an automatic weapon in the State of Michigan?"

The defendant immediately interposed an objection and the court admonished: "The jury will not consider that."

Thereafter, a conference was held between the court and the attorneys out of the hearing of the jury. The court then said to the prosecuting attorney:

"I don't think you can go into that until you decide whether this is a properly authenticated record [Exhibit No. 12] and what it amounts to. I don't know yet whether it will be in evidence. So I would advise that you not get into it. I have something to check here."

The prosecutor argued the defendant had put his character in issue and, therefore, it was proper to inquire whether the character witnesses were aware of the prior conviction. The court then stated that he would "have this decided by morning, and you [the prosecutor] will have plenty of chance to get into it if I admit it."

The following morning the court advised counsel that he had decided to receive Exhibit No. 12 into evidence for the limited purposes of showing appellant's motive, intent, and lack of mistake or accident under K. S. A. 60-455. The defendant once again objected that the prior conviction should not be admitted because it was too remote in time, and because there was no similarity be-

tween the 1958 conviction and the alleged crime for which he was then being tried. The appellant's counsel explained that with respect to the 1958 conviction the defendant pleaded guilty where three or four people were involved in the crime and some other party in the group had the weapon.

During the same conference the prosecutor inquired if he would be permitted to cross-examine the appellant on the witness stand about the previous conviction. The court ruled that since he was reluctant to admit the prior conviction anyway, he would not allow the prosecutor to question the defendant about the prior conviction, if the defendant did not attempt to explain or discuss it in his direct examination. In ruling on this matter the court said:

". . . I am a little reluctant to let these things in, anyway, because my own personal feeling is that despite these limiting instructions, some of what Mr. Brunk says is true. They consider it for broader purposes. This is a 15-year-old deal. I would say that if he doesn't attempt to explain, you will not be permitted to question him about it."

A little later the court said: "The thing I want to avoid here . . . is an overamplification of this 15-year-old conviction which I think we could easily blow clear out of proportion here."

No attempt was made by the prosecuting attorney out of the presence of the jury to show the circumstances or similarity of the prior crime, evidenced by Exhibit No. 12, to the charges for which the defendant was on trial. On this point the court said:

"Well, the document speaks for itself. It is in, and it will be in. Of course, anything he goes into, you have a right to cross-examine him about it."

The defendant took the stand and testified that he had been admitted to the Larned and Osawatomie State Hospitals on several occasions because of a "drinking problem". For four or five years previous to the trial the defendant had experienced black outs. He took medication that Dr. Chang had prescribed for him and when he drank a large amount of liquor while on medication he would "go into a coma."

The defendant testified that around noon on April 2, 1973, Forte returned to the residence they shared. Forte had received a pension check in the mail that day, and when the defendant said he was going down to 10th Street for a while and then to his dentist's office, Forte gave defendant the pension check and told him to pick up some groceries while he was out.

While visiting with some friends in front of a liquor store on 10th Street, the defendant began drinking and continued until sometime

that night. The defendant did not remember when he quit drinking except that it was night. The next thing the defendant remembered was being awakened in the living room of Forte's house by one George Bright, who told the defendant Forte was dead in the kitchen. According to the defendant he got up and looked at Forte; then Bright convinced him they ought to get out of the house so they departed in Bright's automobile. As they drove around Bright encouraged the defendant to cash Forte's pension check (which he still had) but the defendant refused, though he allowed Bright to cash it at a gasoline station.

After Forte's death was discovered by the authorities, the defendant and Bright were put in jail together. While in jail, the defendant made various statements to the police in which he admitted killing Forte in self-defense. However, at the time of the trial, the defendant contended he did not kill Forte under any conditions. He accounted for the discrepancy between his previous statements and his testimony at the trial by testifying that while in jail George Bright and another unknown individual convinced him he should not "snitch" on the actual killer, or the defendant's young daughter would be in danger and the defendant himself would be subject to an accident, such as falling from some high place, once he got to Lansing. According to the defendant, these threats were the reasons for his original statements to the police.

Additional light is thrown upon the admission of Exhibit 12 in evidence by the following remarks of the trial judge:

"I will give an instruction that will attempt to limit this for one purpose as having some bearing on his intent, his lack of mistake or accident.

"Now, I am a little puzzled in this case when I get down to the instructions. It comes down to this. The State contends he committed the killing while attempting a robbery. There is little evidence on that."

After the defense rested the trial court instructed the jury, among other things, that the defendant could be found guilty of murder in the first degree for maliciously killing Forte in an attempt to commit the crime of robbery, and the defendant could be found guilty of voluntary manslaughter if he intentionally killed Forte by stabbing him during a sudden quarrel or in a heat of passion.

The trial court also gave an instruction to the jury limiting its consideration of Exhibit 12, under 60-455, as bearing upon the defendant's motive, intent, or absence of mistake or accident in connection with the incident involved in this case.

In closing argument the prosecuting attorney referred to Exhibit 12 and made the following argument:

"I direct your attention to State's Exhibit 12, which shows you in 1958 this man was convicted of armed robbery with an automatic weapon, not a toy gun, not anything. In the State of Michigan this man, who has been painted to be so nonviolent, they beat him up, takes checks and sits there not fighting back, he was capable in 1958 of committing the crime of aggravated armed robbery with an automatic weapon. That's this nonviolent, nice young man sitting here."

No objection was made by defense counsel to this argument, but in his brief counsel for the appellant argues: an objection and argument on the point would have served only to overemphasize and exaggerate the prior conviction to the appellant's disadvantage.

One of the most troublesome areas in the trial of a criminal case is the admissibility of prior convictions of the defendant for the limited purposes authorized under K. S. A. 60-455. From the motley of cases decided by this court since the enactment of the New Code of Civil Procedure, which became effective on January 1, 1964, an attempt will be made to analyze some of the more recent decisions designed to give guidance to trial courts in the application of the legislative intent expressed in 60-455.

K. S. A. 60-455 provides:

"Subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to sections 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The foregoing section was first before this court in *State v. Wright*, 194 Kan. 271, 398 P. 2d 339, and the defendant contended that evidence of prior convictions, offered against him was barred by the rule that the prior conviction had no relevant purpose, other than to show his disposition to commit crime as the basis of an inference that he committed the crime for which he was being tried. The court, however, held that the evidence was admissible as tending to prove identity of a person committing the forgery in question and other elements of the offense. In the opinion the court stated the rule of evidence set forth in 60-455, *supra*, as applied to criminal proceedings had not materially changed the case law as it had developed in Kansas prior to the enactment of 60-455, *supra*.

Since *State v. Wright*, supra, the statutory rules of evidence have

been stated in amplifying language which indicates a more conservative approach in the admission of evidence of prior convictions, particularly on the element of intent. There must be a marked similarity of pattern from which an inference of intent may be drawn, where the issue of intent is in doubt and not established from the facts giving rise to the commission of the present offense.

The former conviction must have some peculiar significance, other than its force in showing a disposition of the defendant to commit crime, as a circumstance to support the charge of guilt in the present case. The offer of a previous conviction to prove intent, where intent is a necessary element of the crime charged, may be the same thing as offering it to show the defendant's bad character and thus a disposition for criminal intent—a result which is not permissible under the 60-455, *supra.*

Relevancy must first be established before a former conviction may be received to prove some element of the crime charged. Relevancy, although the primary test, is not the only test. The trial judge is under a duty to weigh the probative value of such evidence for the limited purpose for which it is offered against the risk of undue prejudice, in keeping with the philosophy expressed in K. S. A. 60-445 and the fundamental rule of discretion.

K. S. A. 60-445 provides:

"Except as in this article otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

Thus, in *State v. Davis,* 213 Kan. 54, 515 P. 2d 802, the defendant was convicted on two counts of selling heroin. The prosecution's witness testified as to two prior convictions when he purchased heroin from the defendant. This court held relevancy to prove some material fact was not the only test of admissibility of evidence of past crimes under 60-455. The thrust of the court's opinion is that the probative value of evidence of past crimes must first be weighed against its prejudicial nature, and even though relevant to some issue of material fact, it must not be admitted if the risk of prejudice to the defendant is greater than the probative value of the evidence.

The *Davis* case was followed by *State v. Clingerman,* 213 Kan. 525, 516 P. 2d 1022, where the defendant was charged with first degree robbery and a prior conviction, offered for the purposes of

K. S. A. 60-455, was a plea of guilty to assault with intent to rob. In the opinion the court said:

". . . On the basis of the record before us we must conclude that the prior conviction only tended to prove disposition to commit crime and it should not have been admitted in evidence in the present case. Its relevancy is questionable, its probative worth as to any of the eight statutory factors of proof is highly suspect, its prejudicial impact seems out of proportion to its probative value and confusion from proof of the prior crime may reasonably have resulted in prejudice to the defendant. (See *State v. Motley,* 199 Kan. 335, 430 P. 2d 264.)

"When the trial court admitted evidence of this prior crime to prove all eight of the statutory factors of proof without considering how and in what way they might be relevant to prove the crime charged it abused its judicial discretion. The case must therefore be reversed and remanded for a new trial." (p. 528.)

The relevancy of a prior conviction to the offense charged is linked in the similarity of the two offenses. In *State v. Johnson,* 210 Kan. 288, 293, 502 P. 2d 802, similarity of prior offenses with the present charge was held to be sufficient to establish relevancy on the issue of identity. The prior convictions were first degree murder and the offense charged was first degree murder. The evidence presented at the trial disclosed the previous homicides were similar to and, in fact, almost identical with the characteristics of the offense for which the defendant stood charged. The victims in the previous homicides were stabbed with a knife at numerous places on their bodies. In the opinion the court said:

". . . Where one or more of the elements or incidents of an offense numerated as exceptions under K. S. A. 60-455 is an issue in the case, we have repeatedly held that the similarity of the two offenses makes the previous conviction relevant. . . ."

Former convictions of burglary and conspiracy to commit burglary were held not sufficiently similar to the illegal possession of firearms, and thus not admissible under 60-455, *supra.* Neither was conspiracy to commit burglary so similar to conspiracy to commit robbery as to make evidence thereof admissible under 60-455 in *State v. Sullivan & Smith,* 210 Kan. 842, 849, 504 P. 2d 190.

Perhaps the best statement of the rule regarding similarity of the prior conviction to establish relevance to the charges for which the defendant is being tried is set forth in *State v. Gunzelman,* 210 Kan. 481, 488, 502 P. 2d 705:

"Evidence of unrelated offenses is generally inadmissible under the statute. The requirements of the statute should be strictly enforced. *To justify departure from this general inadmissibility the trial court should conduct a*

*hearing in the absence of the jury to determine probative value as to one or more of the eight elements to which such evidence must be relevant, i. e. motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.* When in the discretion of the court there is a pattern, similarity or connection between the facts surrounding the prior offense and the one with which the accused is presently charged which has relevance in proving specific matters in issue, the prior conviction may then be admitted. Such evidence may only be admitted with proper limiting instructions. (See *State v. Motley,* 199 Kan. 335, 337, 338, 430 P. 2d 264, and *State v. Taylor,* 198 Kan. 290, 424 P. 2d 612.) The state did not attempt to have the evidence of prior offenses admitted in accordance with K. S. A. 60-455." (Emphasis added.)

Generally the remoteness in time of a prior conviction if otherwise admissible, affects the weight of the prior conviction rather than its admissibility. In other words, the probative value of a prior conviction progressively diminishes as the time interval between the prior crime and the present offense for which the defendant is on trial lengthens. Thus a seventeen-year-old conviction admitted at a trial before a jury was permitted in *State v. Fannan,* 167 Kan. 723, 207 P. 2d 1176; a 28-year-old conviction was excluded because it had no probative value in *State v. Owen,* 162 Kan. 255, 176 P. 2d 564; a conviction approximately twenty years old at the time of the trial was admitted in evidence and affirmed on appeal in *State v. Jamerson,* 202 Kan. 322, 449 P. 2d 542; and two offenses, one eleven years and the other sixteen years old, were admitted before a jury as prior offenses in *State v. Finley,* 208 Kan. 49, 490 P. 2d 630.

In *State v. O'Neal,* 204 Kan. 226, 461 P. 2d 801, the defendant was convicted of second degree murder at a trial where a 29-year-old prior conviction for felonious assault was admitted under 60-455, *supra.* The trial was to the court, and on appeal it was held remoteness of the prior conviction did not render it inadmissible, but there was no showing of similarity between the prior conviction and the present charge, so the prior conviction should not have been admitted. In the opinion the court said:

"The determination of relevancy is a matter left to the judicial discretion of the trial judge. However, exercise of that discretion must not be abused. *It must be based upon some knowledge of the facts, circumstances or nature of the prior offense.*

"The prosecution in the present case urged the prior conviction to prove intent to commit the present crime and to show the shooting did not occur through mistake or by accident. The prior conviction was for felonious assault. *The authenticated copies of the conviction do not show the facts, circumstances or nature of that assault or the means by which it was accomplished.*

From the record before us we cannot say a weapon was used in the prior assault. There may or may not have been similarities in the facts of that case which would be relevant to prove intent or absence of mistake in the present case. (See *State v. Taylor,* [198 Kan. 290, 424 P. 2d 612]; *State v. Motley,* 199 Kan. 335, 430 P. 2d 264; *State v. Owen,* [162 Kan. 255, 176 P. 2d 564]; *State v. Mader,* 196 Kan. 469, 412 P. 2d 1001; *State v. Frizzel,* 132 Kan. 261, 295 Pac. 658.) On the basis of the record before us we conclude the prior conviction for felonious assault should not have been admitted in evidence in the present case." (p. 231.) (Emphasis added.)

For a rather exhaustive review of the cases decided by this court under K. S. A. 60-455 and an enlightening discussion on the subject see, Gard, Kansas Code of Civil Procedure, 1974 Supp. § 60-455.

A summary of some of the basic principles announced in our decisions interpreting 60-455 may be found in *State v. Bly,* 215 Kan. 168, 523 P. 2d 397.

Turning now to the facts in the instant case it is readily apparent the trial court was concerned with the admission of the fifteen-year-old prior conviction of the appellant. Exhibit No. 12 was established to be a duly authenticated copy of a 1958 order from the State of Michigan sentencing the appellant to imprisonment for three to fifteen years for robbery while armed with an automatic weapon. The authenticated copy of the conviction did not show the facts, circumstances or nature of the robbery. It was admitted in evidence by the trial court as relevant because "the document speaks for itself". No effort was made by the prosecution to establish the facts, circumstances or nature of the prior offense. The trial court admitted the exhibit with no knowledge of the facts surrounding the prior offense. Under these circumstances the probative value as to one or more of the eight elements to which such evidence must be relevant was not established. The only enlightenment in the record tending to indicate the nature of the prior offense was the statement of counsel for the appellant in arguing the dissimilarity of the prior offense. The appellant's counsel explained that the appellant entered a plea of guilty in the 1958 conviction, where three or four people were involved in a robbery and some other party in the group had the weapon. Assuming these facts the similarity of the two offenses is not sufficient to establish relevance. At the trial the issue of intent was in doubt, but there was no showing of a marked similarity of pattern concerning the prior offense from which an inference of intent could be drawn. The admission of the prior conviction placed in evidence to prove intent had no peculiar

significance other than its force in showing a disposition of the appellant to commit crime, a result prohibited by 60-455.

Here the appellant was charged with felony murder—the murder of Forte by stabbing, while in the preparation or attempt to perpetrate the crime of robbery. The trial court in its comment noted "there is little evidence on that". The parties to this appeal have not seen fit to favor this court with the state's evidence introduced to prove the offense charged, and the various statements made by the appellant while in custody have not been set forth in the record.

As previously stated, the remoteness in time of a prior conviction, if otherwise admissible, affects the weight of the prior conviction rather than its admissibility. There is no hard and fast rule by which it can be determined when evidence of prior crimes, if otherwise admissible, becomes irrelevant because of intervening time and the matter is left largely to the discretion of the trial judge. (*State v. O'Neal,* supra.) Clearly, the relevancy of a prior crime to prove any of the elements in K. S. A. 60-455 diminishes as the time interval between the prior conviction and the present charge lengthens. Considering the remoteness in time of the prior conviction admitted in the case at bar coupled with the failure of the state to establish the similarity of the prior offense with the charge for which the defendant was on trial, we believe the prejudicial nature of the prior conviction far outweighs its probative value as evidence. As heretofore noted there is "little evidence" that at the time of the alleged murder the appellant was perpetrating or attempting to perpetrate a robbery. Under the circumstances the prejudicial impact of the prior conviction upon the jury was far out of proportion to its probative value, if any, to establish the statutory factors for which the trial court admitted it in evidence.

Other points asserted by the appellant have been carefully reviewed but on the record presented are found to be without sufficient merit to warrant discussion in this opinion.

The judgment of the lower court is reversed with directions to grant the appellant a new trial.

FATZER, C. J., and FROMME, J., dissent.

FONTRON, J., concurs in the result.