No. 55,325

STATE OF KANSAS, *Appellee,* v. DANNY H. WILLIAMS, *Appellant.*

(670 P.2d 1348)

Opinion filed October 21, 1983.

*Charles A. O'Hara,* of O'Hara, Busch, Johnson & Falk, of Wichita, argued the cause and was on the brief for appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Danny H. Williams appeals his first-degree murder (K.S.A. 21-3401) conviction for the brutal stabbing death of Francis Ellifson.

The first issue on appeal is alleged error by the trial court in permitting the prosecution to present evidence of a twelve-year-old Idaho murder conviction for purposes of proving identity.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person

committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 *such evidence is admissible* when relevant *to prove* some other material fact including motive, opportunity, intent, preparation, plan, knowledge, *identity* or absence of mistake or accident." (Emphasis supplied.)

In *State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974), this court observed:

"Where a similar offense is offered for the purpose of proving *identity*, the evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the defendant committed both of the offenses. In other words to show that the same person committed two offenses it is not sufficient simply to show that the offenses were violations of the same or a similar statute. There should be some evidence of the underlying facts showing the manner in which the other offense was committed so as to raise a reasonable inference that the same person committed both offenses. As pointed out by Mr. Justice Kaul in *State v. Johnson*, 210 Kan. 288, 502 P.2d 802 [(1972)]:

" ' "The quality of sameness *is* important when pondering the admission of other crimes to prove identity." ' (p. 294.)"
215 Kan. at 177. (Emphasis supplied.)

In *State v. Henson*, 221 Kan. 635, 562 P.2d 51 (1977), this court commented:

"Where a prior conviction or civil wrong is offered for the purpose of proving identity, evidence should disclose sufficient facts and circumstances of other offenses or civil wrongs to raise a reasonable inference that defendant committed both. (*State v. Donnelson*, 219 Kan. 772, 549 P.2d 964 [1976].) In other words, similarity must be shown in order to establish relevancy. (*State v. Bly*, [215 Kan. 168]; *State v. Cross*, 216 Kan. 511, 532 P.2d 1357 [1975]; and *State v. Johnson*, 210 Kan. 288, 502 P.2d 802 [1972].) The similarity of offenses is a key factor in relevancy. (*State v. Masqua*, 210 Kan. 419, 502 P.2d 728 [1972], cert. den. 411 U.S. 951, 36 L.Ed.2d 413, 93 S.Ct. 1939 [1973].)" 221 Kan. at 644.

In *State v. Lomax & Williams*, 227 Kan. 651, 608 P.2d 959 (1980), this court restated what it had said many times concerning invocation of K.S.A. 60-455 to show identity:

"The rule is well established in this State that where a similar offense is offered for the purpose of proving identity, the evidence must disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the same person committed both of the offenses. *State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974)." 227 Kan. at 653.

However, K.S.A. 60-455 does not require the two offenses to be identical. It is sufficient if they were similar. *State v. Ritson*, 215 Kan. 742, 747, 529 P.2d 90 (1974).

We turn now to the facts of the two crimes relevant to this issue.

## Francis Ellifson Murder
### (Conviction Herein)

On April 4, 1982, defendant spent several hours drinking at a party. Around 10:30 - 10:45 p.m. defendant had an argument with another person at the party, became angry and left the premises alone to go to his home at 2336 North Jackson in Wichita. At about the same time Francis Ellifson was returning to her home at 2346 North Jackson from an evening church service. Mrs. Ellifson was alone in the home when she received a telephone call from a sister shortly before 11:15 p.m. During the conversation Mrs. Ellifson left the phone to answer the door. The sister heard Mrs. Ellifson say, "Get away. Leave me alone. Oh, no." She then heard scuffling and the phone went dead. The sister's husband called the police, said call being received at 11:14 p.m. The sister then called Charlie Ross, father of the two women, who lived near the Ellifson home. Mr. Ross arrived at the Ellifson home at the same time as a third sister. Mr. Ross tried to gain admittance to the home, but Mrs. Ellifson, clearly frightened of something in her home, told him to leave. Mr. Ross pretended to leave but returned almost immediately with two police officers who had arrived. Officer Linn started around to the back of the house where he saw a scuffle between two people. Meanwhile Mr. Ross and the other officer were approaching the front of the home and heard Mrs. Ellifson scream "Daddy" from the backyard. The attacker fled. Mrs. Ellifson was lying on the ground, fatally stabbed in the abdomen but still conscious. She said her attacker was a white man. She lapsed into unconsciousness shortly thereafter. Mrs. Ellifson was wearing only a slip and torn hosiery.

The victim's husband was unable to determine if anything had been taken from the home. The rest of the clothing the victim had been wearing was found in the home, including her blood-stained blouse.

## Melba Gray Murder
### (Prior Idaho Conviction)

On November 12, 1970, defendant had been drinking at a party, had an argument, became angry, left alone and returned home about 11:00 p.m.

The following morning the nude body of Melba Gray was found on a railroad track in Shoshone, Idaho, some two and a half

miles from her home. She had been run over by a train at about 2:00 a.m. The autopsy revealed Mrs. Gray was already dead when her body was dismembered by the train. Before death she had been beaten on the head, strangled, and stabbed in the abdomen. The official cause of death was multi-massive traumatic injuries. Defendant was charged with first-degree murder but pled guilty to the reduced charge of second-degree murder and received a life sentence.

Similarities Between the Crimes

Defendant's activities immediately prior to the crimes were almost identical. Both victims were women several years older than defendant, who lived within 450 feet of defendant's residence. In each instance the victim had arrived home shortly before the attack occurred. Each victim received long slicing wounds in addition to the massive stabbing abdominal wounds. Sexual molestation was the apparent motive for both attacks. In each crime the victim was removed from her home, after the initial attack, although the attacker was interrupted in the Ellifson case by the arrival of the victim's father and police officers.

In *State v. Churchill*, 231 Kan. 408, 646 P.2d 1049 (1982), defendant's first-degree murder conviction was affirmed where the State had been allowed to use evidence of a prior rape conviction. In both crimes young women had been attacked in their apartments. We stated:

"The evidence presented disclosed a large number of similarities as well as dissimilarities. Both victims were young, white females living in second floor apartments; both crimes were committed in the morning hours; and in both cases a large, wooden-handled knife was wielded by the accused. The young woman in Wichita was threatened with strangulation and with the knife; Mrs. Halling's body bore bruises in the neck region, and she was actually stabbed. Many other similarities and dissimilarities have been called to our attention by industrious counsel.

"The defendant points out that the prior conviction was for rape, while in the case at hand there was no evidence of rape or attempted rape. Both crimes, however, were crimes of violence committed against young women in their homes." 231 Kan. at 415.

Admittedly the facts before us present a close question on whether there was sufficient similarity between the crimes for K.S.A. 60-455 identity purposes. After carefully reviewing the record, we conclude the trial court did not err in permitting the State to introduce evidence pursuant to 60-455 of the Idaho murder to prove identity.

For his second issue defendant challenges the propriety of the instruction on the limited admissibility of the evidence of the Idaho murder conviction.

The trial court instructed as follows:

"Evidence has been admitted tending to prove that the defendant committed a crime other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's identity."

This instruction is taken from PIK Crim. 2d 52.06. The instruction, as given, adequately and accurately states the relevant law and we find no error on this issue.

The third issue is alleged error by the trial court in permitting the State to present two expert witnesses relative to blood tests performed, in view of the fact the two witnesses were not in complete agreement in their interpretation of the evidence.

Defendant contends:

"The reason the State did this was obvious. They outspent the Defendant to show that all the blood tests were in effect 'Mickey Mouse' and that the Jury should not believe any of them. Also, what the Prosecution did was present two inconsistent experts on their case in chief. The State is under a duty to present truthful testimony. To present two witnesses which the State knew prior to calling them would give different opinions, was in violation of presenting truthful testimony. One of the two experts had to be in error and the State should have made an election as to which one to call and should have called that expert.

"The State took what was very relevant evidence to show that Defendant did not commit the crime of murdering Francis Ellifson, and turned all of the expert testing into a joke."

To these contentions the State responds:

"The experts' interpretations of test results are apparently also somewhat subjective. The mere fact that the experts did not come to identical conclusions does not, as alleged by appellant, show that any one of them are not truthful. A number of factors go into such expert opinions including the credentials of the expert, his or her experience and training, the methodology used, the quality control procedures to verify and preserve the test results, the condition of the item tested, etc. . . . [T]here was no error in presenting both experts to the jury to allow them the opportunity to test the weight to give to the opinion of the serology expert who first examined the evidence."

It should be noted that defendant called an expert serology witness who did not agree with either of the State's expert witnesses.

Kansas trial courts have wide discretion in allowing the testimony of expert witnesses pursuant to K.S.A. 60-456(b), and the use of such testimony ordinarily goes to the weight of the

evidence and not its admissibility. *Schaeffer v. Kansas Dept. of Transportation,* 227 Kan. 509, 608 P.2d 1309 (1980); *Plains Transp. of Kan., Inc. v. King,* 224 Kan. 17, 578 P.2d 1095 (1978). The basis for admission of expert testimony is the need to assist the jury in understanding the facts of the particular case. *Lollis v. Superior Sales Co.,* 224 Kan. 251, 580 P.2d 423 (1978). As admission of expert testimony lies within the sound discretion of the trial court its ruling will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Reed,* 226 Kan. 519, Syl. ¶ 1, 601 P.2d 1125 (1979). A party claiming an abuse of discretion has the burden to establish the claim. *Hoover Equipment Co. v. Smith,* 198 Kan. 127, 134, 422 P.2d 914 (1967); *Skahan v. Powell,* 8 Kan. App. 2d 204, 208, 653 P.2d 1192 (1982); *Lemons v. St. John's Hospital of Salina,* 5 Kan. App. 2d 161, 613 P.2d 957, *rev. denied* 228 Kan. 807 (1980); *State v. Wright,* 4 Kan. App. 2d 196, Syl. ¶ 5, 603 P.2d 1034 (1979), *rev. denied* 227 Kan. 928 (1980).

In the instant case the jury was instructed on the credibility and weight they could attach to witnesses' testimony as follows:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use that knowledge and experience which you possess in common with men in general in considering the testimony of each witness. You also may take the following factors into consideration when weighing a witness's testimony:

    a)   the witness's ability and opportunity to observe and know the things about which he had testified;

    b)   the clarity and accuracy of the witness's memory;

    c)   the witness's manner and conduct while testifying;

    d)   any interest the witness may have in the result of the trial;

    e)   the reasonableness of the witness's testimony when considered in light of all the evidence in the case; [and]

    f)   any bias, interest, prejudice or motive the witness may have.

"If you find that any witness has willfully testified falsely concerning any material matter, you have a right to distrust the testimony of that witness in other matters, and you may reject all or part of the testimony of that witness, or you may give it such weight as you think it deserves. You should not reject any testimony without cause."

We conclude the trial court did not abuse its discretion in allowing the State to call two expert serology witnesses who were not in total agreement as to their interpretations of the evidence.

Finally, defendant contends the evidence was insufficient to sustain the conviction herein.

It is the function of the jury, not of the appellate court, to weigh evidence and pass upon the credibility of witnesses. Further, where a verdict is based on substantial competent evidence it will not be disturbed on appellate review. *State v. Holt*, 221 Kan. 696, 700-701, 561 P.2d 435 (1977). When, on appeal, the sufficiency of the evidence in support of the conviction is challenged, the question for the reviewing court is whether the evidence, when viewed in the light most favorable to the prosecution, convinces the appellate court a rational fact finder could have found defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781, *reh. denied* 444 U.S. 890 (1979); *State v. Everson*, 229 Kan. 540, 542, 626 P.2d 1189 (1981); *State v. Robinson, Lloyd & Clark*, 229 Kan. 301, 305, 624 P.2d 964 (1981); *State v. Mick*, 229 Kan. 157, 162, 621 P.2d 1006 (1981); *State v. Puckett*, 6 Kan. App. 2d 688, 691, 634 P.2d 144 (1981), *aff'd* 230 Kan. 596, 640 P.2d 1198 (1982); *State v. Peoples*, 227 Kan. 127, 133, 605 P.2d 135 (1980); and *State v. Voiles*, 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979).

The evidence against the defendant was circumstantial. However, a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Ward*, 233 Kan. 144, 145, 660 P.2d 957 (1983). See also *State v. Morton*, 230 Kan. 525, 530, 638 P.2d 928 (1982); *State v. Henderson*, 226 Kan. 726, 731, 603 P.2d 613 (1979); *State v. White & Stewart*, 225 Kan. 87, 99, 587 P.2d 1259 (1978); and *State v. Johnson*, 223 Kan. 185, 187, 573 P.2d 595 (1977).

In addition to the evidence previously discussed in regard to issue number one, the following should be included in the discussion relative to sufficiency of the evidence. Officer Linn had a glimpse of Mrs. Ellifson's attacker before the man fled down a dark alley, and described the attacker as a white male wearing blue jeans and a white T-shirt (later the officer testified he just assumed the dark pants were blue jeans). A scanty description of the attacker was immediately broadcast on the police radio. Patrol Officer Spurgeon heard the broadcast at 11:18 p.m. and arrived in the area of the crime scene at 11:25 p.m. At 11:32 p.m. he stopped defendant, who was leaving a nearby Quik Trip store. Although the temperature was in the mid-fifties, defendant was described as hot and clammy to the touch as well as short of breath. Defendant was carrying only a

six-pack of Pepsi Cola which he had just purchased in the store (later investigation revealed defendant already had a supply of the beverage in his refrigerator). He was wearing a white T-shirt with stripes around the shoulders. His pants were brown cordu-roy slacks. The T-shirt and pants had fresh blood splotches on them which were later identified as containing a blood enzyme consistent with victim's blood, but not defendant's. Officer Spurgeon returned defendant to the crime scene where Officer Linn stated defendant's appearance (race, height and build) was consistent with that of the fleeing attacker.

The Quik Trip store manager testified defendant went into the restroom upon entry to the store. The restroom was equipped with a toilet stool but no wash basin. After defendant had left, the manager noticed a large quantity of water on the floor around the stool which had not been there previously. The manager mopped the area prior to being questioned by officers. It was the State's theory that the defendant utilized the water in the toilet to wash blood from his person. There was also evidence defendant had owned a buck knife similar to one subsequently found stuck in a tree which was located between the crime scene and the Quik Trip store. There was blood on the knife but the quantity was insufficient for further testing purposes.

We have reviewed the evidence in the light most favorable to the prosecution and are convinced while the same is not over-whelming, a rational fact finder could have found defendant guilty beyond a reasonable doubt.

The judgment is affirmed.

LOCKETT, J., not participating.