NOT DESIGNATED FOR PUBLICATION

No. 120,290

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEON C. HOLLOWAY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK, JR., judge. Opinion filed July 24, 2020. Reversed and remanded with directions.

*Matthew R. Williams*, of Topeka, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: Leon C. Holloway appeals his conviction of sexual exploitation of a child. Holloway raises several arguments on appeal. First, he contends the district court erred by admitting an FD-302 Form Report (FBI report) by the Federal Bureau of Investigation (FBI) in evidence under the business records exception to the hearsay rule. Second, Holloway argues the admission of the FBI report violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Third, Holloway claims the State committed several instances of prosecutorial error which prejudiced his right to a fair trial. Finally, he asserts the district court erred by denying his motion for new trial.

1

Upon our review, we hold the district court committed reversible error by admitting the FBI report in evidence under the business records exception to the hearsay rule. Accordingly, we reverse Holloway's conviction and remand for a new trial. The remaining issues raised on appeal are moot.

FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2015, 12-year-old M.H. reported to school employees that her adoptive father, Holloway, had been sexually abusing her for more than two years. Detectives Alfred Dunn and Andy Caviness were dispatched to M.H.'s school to investigate her report. M.H. told Detective Dunn that Holloway forced her to engage in sexual acts with him and he had taken sexual pictures of her. Detective Dunn arranged to have Misty Flewelling of the Kansas Department for Children and Families (DCF) conduct a "Safe Talk" interview with M.H.

During the Safe Talk interview, M.H. said that pornographic material was located on computers in Holloway's home. Based on M.H.'s disclosures, Detective Dunn obtained a search warrant for Holloway's residence. While executing the search warrant, officers seized several computers, flash drives, and secure digital cards. An Acer laptop and Dell desktop computer were sent to the Regional Computer Forensics Laboratory (RCFL) for examination.

The RCFL is a federal entity that assists agencies by searching phones, computers, and other devices with equipment to locate information inaccessible to other investigators. Detective Caviness asked the RCFL to search the computers for photographs of M.H. and other evidence of child pornography. After the RCFL finished its examination, it issued a brief report detailing its findings. The report listed 371 images obtained from Holloway's computers that were suspected of being possible child pornography. None of the images, however, were of M.H.

2

Detective Caviness sent the images to the National Center for Missing and Exploited Children (NCMEC) to determine the ages of the individuals pictured. NCMEC keeps a database of identified victims of child pornography. Potential child pornography is sent to NCMEC to check for matches in its database. NCMEC sent Detective Caviness a confirmed tip that one image matched a photograph contained in the database. NCMEC also gave Detective Caviness information regarding the FBI case that involved the matching photograph.

Detective Caviness contacted FBI Special Agent Chris Trifiletti about the case. The FBI sent Detective Caviness an FD-302 Form which provided a summary report of the case involving the matching photograph. The FBI report was created in 2004 memorializing an investigation into a series of photographs taken in Paraguay between 1999 and 2000 involving many females under the age of 14. The FBI report used pseudonyms to identify the victims photographed. Detective Caviness determined that the pornographic image from Holloway's computer matched a photo of "Adriana," who the FBI report stated was 12 years old.

Detective Caviness also submitted 53 images from Holloway's computer to Dr. Emily Killough at Children's Mercy Hospital to evaluate the approximate ages of the individuals depicted in the images. Dr. Killough is employed as a pediatrician in the Division of Child Abuse and Neglect at Children's Mercy Hospital. She rendered opinions on eight of the images submitted and determined that the young women depicted in each of the eight photos were "most likely under the age of 18." Relevant to this appeal, Dr. Killough did not opine that the image of Adriana was that of a female most likely under 18 years of age.

The State ultimately charged Holloway with aggravated indecent liberties with a child, rape, two counts of aggravated criminal sodomy, and nine counts of sexual exploitation of a child. Of the nine counts of sexual exploitation of a child, eight were

3

based on images testified to by Dr. Killough and one count was based on the confirmed match from NCMEC. Of note, the crime of sexual exploitation of a child involving the NCMEC match and the FBI report was charged in Count 13 of the complaint and is the subject of this appeal.

During the trial, Detective Caviness testified regarding the RCFL report and images obtained from Holloway's computers. Detective Caviness explained that State's Exhibit 14 was the image from Holloway's computer that matched a known victim of child pornography in NCMEC's database. The district court admitted State's Exhibit 14 without objection.

Detective Caviness also testified regarding the FBI report, which was identified as State's Exhibit 16. The detective explained that he obtained the report from the FBI on a case relating to State's Exhibit 14. Detective Caviness identified the female in State's Exhibit 14 as the Adriana described in the FBI report—State's Exhibit 16. Prior to admission of State's Exhibit 16, the following discussion occurred:

> "[PROSECUTOR:] And on State's Exhibit 16, do you believe this to be a fair and accurate representation of the affidavit you received from the FBI?
> "[DETECTIVE CAVINESS:] Yes, it is.
> "[PROSECUTOR]: Okay. Your Honor, I'd move to admit State's 16.
> "[DEFENSE COUNSEL]: Your Honor, I'd object at this time. This report's not an affidavit. It doesn't have any certificate on there calling it an affidavit, and . . . at the bottom of it actually says that this document does not contain conclusions.
> "[PROSECUTOR]: Your Honor, removing the word, affidavit, I would move to admit State's 16.
> "[DEFENSE COUNSEL]: Your Honor, again, I would object. This report states at the very bottom that this does not contain recommendations nor conclusions, nor did the detective sergeant write the report or anything else.
> "THE COURT: Okay. So are we offering this under a business record? Is that what you're offering it under?

4

"[PROSECUTOR]: Yes, Judge.

"[DEFENSE COUNSEL]: Your Honor, I would object. We cannot prove this is an FBI business record. There's no one here from the FBI to verify that this is a business record from them.

"THE COURT: All right. Let me see it.

. . . .

"THE COURT: I see it. All right. [State's Exhibit] 16 is admitted."

After State's Exhibit 16 was admitted, Detective Caviness read from the FBI report that Adriana was 12 years old when the photograph was taken. Detective Caviness clarified that her age was verified through her birth certificate. On cross-examination, the detective acknowledged that the FBI report was dated April 28, 2004, and stated it contained "neither recommendations nor conclusions of the FBI." Detective Caviness also explained that he talked to Special Agent Trifiletti over the phone.

During Holloway's case-in-chief, Dr. Cynthia Scheibe—a physician specializing in family medicine—testified regarding her observations of the images suspected of being child pornography. Dr. Scheibe believed that it was possible that all the females depicted in the nine photographs were at least 18 years old. Regarding State's Exhibit 14, Dr. Scheibe noted that the female depicted "is a very slender woman. I can't say she's above or below the age of 18." When asked if she would be surprised to know that the female was 12 years old, Dr. Scheibe responded, "It could be true, yeah."

The jury found Holloway not guilty on Counts 1-11, failed to reach a verdict on Count 12, and found him guilty on Count 13—the sexual exploitation of a child charge based on the image of "Adriana" in State's Exhibit 14.

Thirty-six days after he was convicted, Holloway moved for a new trial. He contended the district court should grant a new trial because the State failed to provide complete discovery to the defense, and State's Exhibit 16 should not have been admitted

5

in evidence. The district court denied Holloway's motion and sentenced him to 31 months in prison. Holloway timely appealed.

ADMISSION OF THE FBI REPORT UNDER THE BUSINESS RECORDS EXCEPTION

Holloway first contends the district court erred by admitting State's Exhibit 16 in evidence under the business records exception to the rule against hearsay evidence. He argues that the State failed to establish an evidentiary foundation to admit the FBI report as a business record under K.S.A. 2019 Supp. 60-460(m). During trial, Holloway raised a contemporaneous objection challenging the sufficiency of the State's foundation to admit the FBI report into evidence as State's Exhibit 16 under the business records exception to the hearsay rule. In this way, Holloway preserved the issue for appellate review. See *State v. Rucker*, 309 Kan. 1090, 1096, 441 P.3d 1053 (2019).

*Standards of Review*

When reviewing the admissibility of evidence, we first determine whether the challenged evidence is relevant. *State v. Miller*, 308 Kan. 1119, 1166, 427 P.3d 907 (2018). In this case, Holloway concedes that the FBI report listing Adriana's age was relevant to the charge of sexual exploitation of a child.

If the evidence is relevant, our court next reviews the application of the statutory provisions governing evidence. *State v. Lowery*, 308 Kan. 1183, 1226, 427 P.3d 865 (2018). Rules governing the admission and exclusion of evidence are applied as a matter of law or in the exercise of the district court's discretion, depending on the rules in question. *Miller*, 308 Kan. at 1166.

A district court has considerable discretion when ruling on foundation evidence and its determination will not be reversed absent an abuse of that discretion. *Wiles v.*

*American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). Similarly, our court reviews the admissibility of evidence based on a hearsay exception for an abuse of discretion. *State v. Seacat*, 303 Kan. 622, 634, 366 P.3d 208 (2016). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

*Admissibility Under the Business Records Exception*

Under K.S.A. 2019 Supp. 60-460, hearsay is defined as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Hearsay evidence is inadmissible unless it falls under a recognized hearsay exception. K.S.A. 2019 Supp. 60-406. "The theory behind the rule excluding hearsay evidence is that the credibility of the declarant is the basis for the reliability of the statement, and the declarant must therefore be available for cross-examination." *Seacat*, 303 Kan. at 635.

The State concedes that State's Exhibit 16 contained statements that were offered to prove the truth of the matters stated and, therefore, was hearsay evidence. Accordingly, the FBI report was inadmissible unless it fell within a hearsay exception. The district court admitted State's Exhibit 16 under the business records exception in K.S.A. 2019 Supp. 60-460(m), which allows the admission of:

> "*Business entries and the like*. Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that: (1) They were made in the regular course of a business at or about the time of the act, condition or event recorded; and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness."

7

The business records exception in K.S.A. 2019 Supp. 60-460(m) also states:

"If the procedure specified by K.S.A. 60-245a(b), and amendments thereto, for providing business records has been complied with and no party has required the personal attendance of a custodian of the records or the production of the original records, the affidavit or declaration of the custodian shall be prima facie evidence that the records satisfy the requirements of this subsection."

Holloway highlights infirmities with the foundation provided for the admission of State's Exhibit 16. First, the State and FBI produced no declaration or affidavit from a records custodian in accordance with K.S.A. 2019 Supp. 60-245a(b). Consequently, there was no prima facie evidence that the FBI report satisfied the requirements of an admissible business record. See K.S.A. 2019 Supp. 60-460(m). Second, Holloway asserts the foundation was insufficient for admission because a representative of the FBI did not testify. Finally, Holloway claims that Detective Caviness failed to testify regarding the FBI's investigation methods, the FBI's investigation reporting policies, or how the FBI report was created.

"'The proponent of a particular kind of evidence, whether it be a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence.'" *Wiles*, 302 Kan. at 74 (quoting 3 Barbara, Kansas Law and Practice, Lawyers Guide to Kansas Evidence, § 1.9, p. 28 [5th ed. 2013]). No evidentiary rule explicitly requires a foundation for admission. Instead, a foundation is a "'loose term for preliminary questions designed to establish that evidence is admissible.'" *Wiles*, 302 Kan. at 74 (quoting *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 [7th Cir. 2001]). The purpose of an evidentiary foundation is to prevent the finder of fact from being exposed to inadmissible evidence. *Wiles*, 302 Kan. at 74.

State's Exhibit 16, the FBI report, is generically referred to as an FD-302 Form Report (302 Report). It was created by Special Agent Trifiletti on April 28, 2004. The

8

report memorialized an FBI investigation into a series of photographs containing child pornography that were taken in Paraguay and sold on the internet. Courts have described 302 Reports as internal forms used by the FBI to summarize interviews with witnesses and record information which may later become testimony. *United States v. Gonzalez-Melendez*, 570 F.3d 1, 3 (1st Cir. 2009); *Lame v. United States Dept. of Justice*, 654 F.2d 917, 919 (3d Cir. 1981).

The FBI report in this case begins:

"Due to the creation of the Child Victim Identification Program (CVIP), which assists with the problem of identifying victims of Internet child pornography cases, many inquiries have been received concerning this case. In order to satisfy those inquiries and protect the privacy of the victims, this case summary has been produced."

The FBI report lists Special Agent Trifiletti as the agent who conducted the interview with Adriana. The report states that she was 12 years old when photographed. Adriana's age was verified through her birth certificate and identification card.

Before the district court admitted the FBI report as State's Exhibit 16 under the business records exception to the hearsay rule, Detective Caviness testified that the confirmed match from NCMEC lead him to contact the FBI and obtain the FBI report. Detective Caviness explained that NCMEC sent him "a confirmed tip and sent me the information of a case that it was involved in, the name of the person in the photograph, and the date and time of the photograph." According to the detective, State's Exhibit 16 was the report on the FBI case that involved the confirmed match by NCMEC. Detective Caviness testified that State's Exhibit 16 was a fair and accurate representation of the documents he received from the FBI. After State's Exhibit 16 was admitted, Detective Caviness explained that he talked to Special Agent Trifiletti over the phone, but the two men did not meet in person.

9

A brief summary of Kansas law pertaining to the necessary foundation that must be presented prior to admission of business records is in order. K.S.A. 2019 Supp. 60-460(m) does not require that a custodian of business records or the individual who created the records lay the foundation facts for their admission into evidence. *State v. Smith*, 268 Kan. 222, 238, 993 P.2d 1213 (1999). "The foundation facts may be proved by any relevant evidence, and the person making the entries in the records need not be called to authenticate them if the records can be identified by someone else who is qualified by knowledge of the facts." 268 Kan. at 238. The business records exception gives the district court discretion to determine whether the sources of information, method, and time of preparation reflect trustworthiness. *State v. Cremer*, 234 Kan. 594, 601, 676 P.2d 59 (1984).

Citing Maryland caselaw, our Supreme Court has noted that testimonial evidence is not always necessary to establish that records were made in the regular and normal course of business. *Diversified Financial Planners, Inc. v. Maderak*, 248 Kan. 946, 950, 811 P.2d 1237 (1991). The court explained: "'At times a court may properly conclude from the circumstances and the nature of the document involved that the proffered document was made in the regular course of business.'" 248 Kan. at 950 (quoting *Thomas v. Owens*, 28 Md. App. 442, 448, 346 A.2d 662 [1975]).

Federal cases analyzing the federal equivalent of K.S.A. 2019 Supp. 60-460(m) provide conflicting authority on whether 302 Reports are admissible as business records. Some federal courts have determined that 302 Reports are generally admissible as business records because producing 302 Reports is a regular business activity of the FBI. See *Upstate Shredding, LLC v. Northeastern Ferrous, Inc.*, No. 3:12-CV-1015 (LEK/DEP), 2016 WL 865299, at *13 (N.D.N.Y. 2016) (unpublished opinion); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11335088, at *2 (N.D. Ga. 2008) (unpublished opinion).

10

Other federal courts have ruled that 302 Reports are usually inadmissible hearsay. See e.g., *United States v. Lundergan*, No. 5:18-CR-00106-GFVT-MAS, 2019 WL 4061667, at *3 n.1(E.D. Ky. 2019) (unpublished opinion) (reasoning that 302 Reports memorialize the investigator's selections, interpretations, and interpolations instead of the witness's verbatim statements). One federal court, addressing foundational issues like those in the case on appeal, concluded that 302 Reports "have hearsay problems that cannot be overcome, as the parties have indicated no government investigators will be testifying." *Howard v. Cassity*, No. 4:09CV01252 ERW, 2015 WL 410611, at *3 (E.D. Mo. 2015) (unpublished opinion).

Assuming the FBI report was properly considered a business record, the State in this case failed to lay a foundation to show that State's Exhibit 16 was admissible under K.S.A. 2019 Supp. 60-460(m). To qualify as a business record under K.S.A. 2019 Supp. 60-460(m), the writing must be "made in the regular course of a business at or about the time of the act, condition or event recorded." In this case, the State presented no evidence showing that 302 Reports are made during the regular course of the FBI's business. Additionally, Detective Caviness' testimony failed to establish that he had knowledge of the methods and circumstances involved in the preparation of the FBI report. As a result, the detective's testimony did not show that the methods and circumstances utilized by the FBI in preparation of State's Exhibit 16 indicated it was trustworthy.

The lack of foundation evidence to admit the FBI report as a business record resembles the circumstances addressed in *State v. Taylor*, 198 Kan. 290, 424 P.2d 612 (1967). In *Taylor*, the State offered "rap sheets" produced by the FBI and Kansas Bureau of Investigation, which were not identified by any witness. 198 Kan. at 299. Our Supreme Court held that the State failed to establish the rap sheets were admissible under the business records exception, reasoning:

"None of the conditions required by K.S.A. 60-460(m), to make a business entry admissible as an exception to the hearsay rule, are shown to have been met. The reports, apparently received by the county attorney, certainly may not be said to be records of his office. There was no attempt to identify either one of the 'rap sheets' by competent testimony, nor was any effort made to establish that the sources of information from which the reports were compiled, or the methods and circumstances of their preparation were such as to indicate their trustworthiness. [Citation omitted.]" 198 Kan. at 299.

The State argues that "from the circumstances in which the NCMEC matches possible pornography photos to FBI cases and the nature of the FD-302 document reflecting that match, the foundation here did not require testimonial evidence." The State explains that the FBI report indicates it was made at or around the time of the event recorded. Finally, the State claims that the district court acted within its discretion in finding that the FBI report was trustworthy evidence.

Although Detective Caviness explained that NCMEC matches must have a victim name and case number, this testimony does not show that the FBI report was made in the regular course of business nor does it reveal the circumstances of its preparation. State's Exhibit 16 itself also fails to clearly show that it was created around the time FBI agents interviewed Adriana and verified her age. The FBI report states the case was opened on March 16, 2000, and involved an investigation in Paraguay. It suggests that following the investigation, the Child Victim Identification Program was created and resulted in inquiries into the case. The FBI report—which was characterized as a "case summary"— was produced to respond to those inquiries. Although the FBI report states that it was created on the same day of the investigation—April 28, 2004—the report appears to have been created years after the victim interviews occurred, and the recorded investigation date was when Special Agent Trifiletti compiled information from the Paraguay investigation into the FBI report.

12

Additionally, the FBI report does not itself demonstrate that the methods and circumstances regarding its preparation indicated its trustworthiness. The report suggests that it was created on April 28, 2004, based on interviews conducted sometime between March 16, 2000, and April 28, 2004. But the report does not explain whether the document was compiled during the interviews or sometime after the interviews using agent notes, other investigative reports, and/or agent memories. To the extent that agent notes were relied on to create the FBI report, the document would amount to triple hearsay, suggesting a lack of trustworthiness. See *Carpenters Health*, 2008 WL 11335088, at *4 ("[G]iven the triple layer of hearsay inherent in all of the Eskew 302 Report's statements regarding channel stuffing, this Court finds that the source of the channel stuffing information in the report indicates a lack of trustworthiness . . . .").

Since the State failed to produce foundation evidence showing that State's Exhibit 16 was made in the regular course of business around the time of the interview, or that the method and circumstances of its preparation indicated its trustworthiness, the district court abused its discretion by admitting the FBI report into evidence under the business record exception to the hearsay rule. As a result, we must determine whether the error in admitting State's Exhibit 16 was harmless. See K.S.A. 2019 Supp. 60-261.

*Harmless Error*

The erroneous admission of evidence under statutory evidentiary limitations is reviewed for harmless error under K.S.A. 2019 Supp. 60-261. *Lowery*, 308 Kan. at 1235. The harmless error analysis under K.S.A. 2019 Supp. 60-261 requires us to determine "whether there is a reasonable probability that the error affected the outcome of the trial in light of the entire record." *State v. Perez*, 306 Kan. 655, 666, 396 P.3d 78 (2017). The State, as the party benefitting from the improper admission of the evidence, has the burden of persuading our court that the error was harmless. *Lowery*, 308 Kan. at 1236.

The State contends that any error in admitting the FBI report was harmless because the jury could use its "common knowledge ability to discern that the victim in State's [Exhibit] 14 was well under the age of 18." Relying on Kansas and federal caselaw, the State asserts that a jury can determine that an individual is under 18 years old by looking at a photograph of the person.

As the State argues, a jury in many circumstances may review sexually explicit photographs to determine whether an individual depicted is less than 18 years old without the need for expert testimony or evidence of the victim's specific age. *State v. Hulsey*, No. 109,095, 2014 WL 4627486, at *12-14 (Kan. App. 2014) (unpublished opinion). State's Exhibit 14 is a photograph depicting a young postpubescent female who appears likely in her adolescence and who a jury could reasonably conclude is under 18 years of age. But despite the photograph, we find there is a reasonable probability that the wrongful admission of State's Exhibit 16 affected the outcome of the trial in light of the entire record.

The FBI report identifying the female in State's Exhibit 14 as 12-year-old Adriana was the most damaging evidence produced at trial that the individual was under 18 years of age. As the State acknowledges, it relied on the FBI report throughout trial and during closing argument, arguing that the evidence proved the age of the individual depicted in State's Exhibit 14. The admitted evidence was not cumulative, and no other evidence established that the individual was 12 years old.

While the State suggests that State's Exhibit 14 renders the admission of State's Exhibit 16 harmless, the FBI report provided unequivocal evidence that the individual was under 18 years old. On the other hand, State's Exhibit 14 relies on individual juror perceptions to view a photograph and speculate regarding the age of the female. Most concerning, when examining the image, one physician, Dr. Scheibe, could not say whether the female was younger or older than 18 years of age. Moreover, the State's

14

expert physician, Dr. Killough, did not opine that the image of Adriana was that of a female most likely under 18 years of age. As a result, we find that the State failed to prove that the error was harmless.

The jury acquitted Holloway or was unable to reach a verdict on the other eight counts of sexual exploitation of a child. We find a reasonable probability that the jury would have also acquitted Holloway or been unable to reach a verdict on the charge based on State's Exhibit 14 without the erroneous admission of State's Exhibit 16. Accordingly, we hold the error in admitting the FBI report was not harmless and, therefore, reverse Holloway's conviction and remand the case for a new trial.

Holloway raises other issues on appeal challenging his conviction, contending that the admission of State's Exhibit 16 violated his rights under the Confrontation Clause, the State committed prosecutorial error, and the district court erred by denying his motion for new trial. But since we find the district court committed reversible error by admitting the FBI report under the business records exception to the hearsay rule, these remaining issues are moot.

Reversed and remanded for a new trial on Holloway's conviction of sexual exploitation of a child.

* * *

ARNOLD-BURGER, C.J., dissenting:  I respectfully dissent. I find no reversible error and would affirm Leon Holloway's conviction for sexual exploitation of a child. The majority accurately sets out the facts of this case and I will not repeat them here. And as to the admissibility of the FD-302 Form Report (FBI report) contained at State's Exhibit 16, I assume—without deciding—that it was admitted in error. I do so because I have no trouble concluding that even if it was admitted in error, there is no "reasonable

15

probability that the error affected the outcome of the trial in light of the entire record." *State v. Perez*, 306 Kan. 655, 666, 396 P.3d 78 (2017).

I begin with the steps taken by the Jackson County Sheriff's Office with child pornography cases as outlined at trial by Detective Andy Caviness. The hard drives that are seized from the defendant are sent to one of the Regional Computer Forensic Laboratories (RCFL) operated by the FBI. In this case the RCFL was asked to examine the computers for child pornography, pictures of the victim, or anything related to "that subject." The RCFL makes the examination and then returns a computer disk to the local agency outlining its findings. This report was introduced into evidence, without objection, as Exhibit 15. The RCFL identified 371 pictures of suspected child pornography. So the next question faced by law enforcement is how to determine if the individuals shown in the photographs are under the age of 18.

Detective Caviness outlined several ways that can be accomplished. First, if the person is familiar to law enforcement, for example someone from their community, they can easily determine age and the place and time the picture was taken. Or, law enforcement can call in a forensic pediatrician to examine the photographs and give an estimated age range of the person depicted. They did that in this case for some of the pictures admitted. The final method—and these methods are not mutually exclusive—is to send the images to the National Center for Missing and Exploited Children (NCMEC). The NCMEC keeps a data bank of known child victims with the date and time the picture was taken and the age of the person depicted. "[T]he NCMEC runs the Child Identification Program, which is a central repository for information regarding identified victims of child pornography. This program assists prosecutors by allowing them to submit proof to juries that a particular item of child pornography depicts an actual, known victim." Henzey, *Going on the Offensive: A Comprehensive Overview of Internet Child Pornography Distribution and Aggressive Legal Action*, 11 Appalachian J.L. 1, 39 (2011). As the United States Supreme Court pointed out recently in *Paroline v. United*

*States*, 572 U.S. 434, 440, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014), because the internet has allowed for easy trading of child pornography, a child's abuse can remain online for years and the exposure of their abuse grows exponentially.

So the Jackson County Sheriff's Office sent the image found on Holloway's computer and depicted in Exhibit 14—and admitted without objection— to the NCMEC to see if their specialists could identify it. They did. They matched it to known child pornography. Detective Caviness testified, without objection, that "[t]hey sent back a confirmed tip and sent me the information of a case that it was involved in, the name of the person in the photograph, and the date and time of the photograph." The "hit" came with a case number and an agent assigned to it. Without objection, Detective Caviness identified the female in State's Exhibit 14 as "Adriana" in the FBI report. Caviness followed up with the FBI regarding the case number and received the information on the case in the form of the FBI report —State's Exhibit 16. It is this report that the majority finds was improperly admitted and the key to Holloway's conviction. This was the only piece of evidence regarding the charge at issue in this appeal to which Holloway objected. Later in testimony elicited by counsel for Holloway, Detective Caviness said he actually spoke on the phone to one of the FBI agents that conducted the investigation and generated the report.

Finally, the State introduced, without objection, Exhibit 17, which listed the websites accessed by Holloway's computer. It substantiated the victim's testimony that, beginning when she was about nine years old, Holloway used a free pornographic website, called xHamster, to show her pornography. The names of the sites accessed included Czech Teens Cumpilation, Two Kids Having Sex, Pretty Teen Pregnant, Sweet Teens Cumpilation, and many more. The jury could easily conclude that Holloway had a preference for accessing adolescent pornography.

17

In sum, State's Exhibit 14 depicts a nude female who appears to be in her adolescence. Although a reasonable juror could not determine her exact age, a juror could easily conclude she was under the age of 18. See *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001) (concluding that the material presented included "images of prepubescent children, and the jury was free to make its own conclusion as to the age of the children depicted"). Detective Caviness testified that NCMEC, which keeps a databank of identified victims of child pornography, matched State's Exhibit 14 to an image of known child pornography. Through Detective Caviness' testimony that NCMEC matched the image to known child pornography, the jury was informed that the female in State's Exhibit 14 was under 18 years old. Although the FBI report listed the victim's age as 12 years old, the State needed to prove only that the person depicted was less than 18 years old. Additionally, the FBI report did not bolster Detective Caviness' testimony about NCMEC's confirmed hit. The FBI report did not contain images that the jury could have used to confirm that State's Exhibit 14 actually matched a known child victim's picture.

And finally, Holloway challenged the veracity of Exhibit 16 several times, including in closing argument. The jury appears to have considered the photographs individually, as it found Holloway not guilty of Counts 6-11 which all involved photographs the State alleged were of children under the age of 18. The jury was not able to reach a verdict on Count 12, which again was a photograph that the State asserted was of a minor. And finally, they were able to come to a verdict of guilty on Count 13, the picture the State described as "Adriana."

As a result, the district court's admission of the FBI report was harmless and does not require reversal.